## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| E.L., a minor, by LA'SHIEKA WHITE the mother, legal guardian, and next friend of E.L., )<br><br>Plaintiff, )<br><br>v. )<br><br>VOLUNTARY INTERDISTRICT CHOICE CORPORATION, )<br><br>Defendant. ) | **JURY TRIAL DEMANDED**<br><br>Case No.:<br><br>_____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

### INTRODUCTION

1.      To escape the rampant crime in the City of St. Louis and secure a better home for her three children, La'Shieka White recently moved with her family to a modest home in the St. Louis suburbs.  As a result of that move, La'Shieka's oldest son, E.L., a third-grade student at Gateway Science Academy (Gateway), will not be permitted to attend Gateway next year.  The only thing preventing E.L. from enrolling at Gateway next year is his skin color.  E.L. is prohibited from attending public schools in the City of St. Louis, including magnet schools and charter schools, because he is African-American.  If he were white he would be eligible to attend those schools. E.L.'s mother, La'Shieka White, brings this lawsuit on his behalf, seeking to vindicate his right to be free of racial discrimination, as guaranteed by the United States Constitution's Equal Protection Clause.

## JURISDICTION AND VENUE

2.      This action arises under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1981 and 1983.  The Court has jurisdiction of these federal law claims under 28 U.S.C. §§ 1331 (federal question) and 1343(a) (redress deprivation of civil rights).  Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), because Defendant resides in this district, and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred or will occur in this district.

4.      Divisional venue is proper in the Eastern Division of this Court, because the Defendant resides in this division and the claim for relief arose in this division.  *See* Local R. 02-07(B)(1).

## PARTIES

**Plaintiffs**

5.      E.L. is a minor, who resides in the city of Maryland Heights in St. Louis County, Missouri.  His residence is zoned for the Pattonville School District.  E.L. is a third grade student at Gateway Science Academy in the City of St. Louis.  He is African-American.

6.      La'Shieka White is E.L.'s mother, legal guardian, and next friend.  She resides in the city of Maryland Heights in St. Louis County, Missouri, with her husband and three children, including E.L.  Her residence is zoned for the Pattonville School District.  La'Shieka White is African-American.

**Defendant**

7.      Defendant Voluntary Interdistrict Choice Corporation (VICC) is a 501(c)(3) non-profit corporation organized under the laws of the State of Missouri.  VICC is governed by a

board of directors comprised of superintendents of the participating St. Louis-area school districts. VICC is responsible for administering the St. Louis Student Transfer Program (transfer program), enacting policies applicable to the transfer program, and making decisions about the transfer program.  Defendant is responsible for the transfer of non-African-American St. Louis County students to public schools within the City of St. Louis.  Virtually all of Defendant's funding to support the transfer program is provided by the State of Missouri through its normal public school aid sources.

**ALLEGATIONS**

**Current VICC Policy**

8.      Only African-American students residing in the City of St. Louis are eligible to transfer to a school district in the County of St. Louis.  VICC's Board policy JCA.BP, which requires the race-based transfer restrictions is attached as Exhibit A, and its provisions are incorporated herein.

9.      Per the Board's policy, only white students residing in St. Louis County are eligible to transfer to a public school in the City of St. Louis.

10.     Any student who lives in the City of St. Louis and non-African-American students who live in the county school districts of Affton, Bayless, Brentwood, Clayton, Hancock Place, Kirkwood, Ladue, Lindbergh, Mehlville, Parkway, Pattonville, Ritenour, Rockwood, Valley Park, or Webster Groves are eligible to attend St. Louis Magnet Schools.  The 2016-2017 Magnet School Guide, which includes the application for St. Louis County residents to attend magnet schools in the City of St. Louis, is attached as Exhibit B, and its provisions are incorporated herein.  The race-based eligibility restrictions are found on page 4 of the Guide.

11.     Although VICC's Board policy JCA.BP limits transfers to white students, the magnet school application extends eligibility to transfer into the city to any "non-African-American" student. African-American students are prohibited from transferring.  *See* Attachment B, at 4.

**The *Liddell* Litigation**

12.     In 1972, black parents filed a class action lawsuit alleging racial discrimination and segregation in St. Louis schools in violation of the Fourteenth Amendment to the United States Constitution.  The Eighth Circuit ruled that St. Louis schools operated a dual-system that was segregated on the basis of race in violation of the Fourteenth Amendment.  A "system-wide remedy" was needed for a "system-wide violation."  *Adams v. United States*, 620 F.2d 1277, 1291 (8th Cir. 1980).  The Eighth Circuit ordered St. Louis schools to integrate and instructed the district court to retain jurisdiction in order to ensure "that the plan effectively integrates the entire St. Louis school system and to ensure that the plan is, in fact, being carried out."  *Id.* at 1297.

13.     On remand to the district court, the parties reached a settlement and proposed a consent decree that was approved by the district court and affirmed by the Eighth Circuit.  *See Liddell v. Bd. of Educ.*, 567 F. Supp. 1037 (E.D. Mo. 1983), *aff'd*, *Liddell v. Missouri*, 731 F.2d 1294 (8th Cir. 1984).  The court retained jurisdiction to enforce the consent decree and settlement. *Liddell*, 567 F. Supp. at 1058.  The consent decree and settlement agreement included a comprehensive plan to improve racial integration in St. Louis schools.

14.     One component of the plan included a voluntary interdistrict transfer plan.  This plan, named the St. Louis Student Transfer Program (transfer program), was based on race.  African-American students residing in the City of St. Louis would be permitted to transfer to school districts in St. Louis County (city-to-county).  White students residing in St. Louis County would be

permitted to transfer into a school located in the City of St. Louis (county-to-city). *Liddell*, 731 F.2d at 1300.

15.     In order to attract white students into schools located in the City of St. Louis, the plan created additional magnet schools in the City. *Id.*  These schools could only be attended by students residing in the City or white students transferring in from the county.  Planning for the creation of new magnet schools was required to focus on attracting suburban white students. *Id.* at 1311-12.

16.     The consent decree governed integration of St. Louis schools until 1999.  In 1999, the district court approved a new settlement agreement.  As a result of the new agreement, federal supervision over the racial integration of St. Louis schools ended.  The Court dismissed the case with prejudice, dissolved all prior injunctions, and dismissed all pending motions as moot. *Liddell v. Bd. of Educ. of the City of St. Louis, Missouri*, No. 4:72CV100 SNL, 1999 WL 33314210, at *9 (E.D. Mo. Mar. 12, 1999).

**The 1999 Settlement Agreement**

17.     The 1999 Settlement Agreement transformed the federally supervised transfer program into a voluntary program under the jurisdiction the Voluntary Interdistrict Choice Corporation.  VICC is a non-profit corporation governed by a board of directors comprised of superintendents of the participating school districts and funded by public dollars.

18.     The 1999 Settlement Agreement continued the race-based St. Louis Student Transfer Program.  Under the terms of the 1999 Settlement Agreement, city-to-county transfers are only permitted for black students, and county-to-city transfers are only permitted for white students.

19.     The 1999 Settlement Agreement continued the magnet school program, and established new race-based enrollment guidelines for magnet schools.

- 5 -

20.     VICC is responsible for administering the transfer program, creating the policy of the transfer program, and making decisions about the transfer program.

21.     The terms of the 1999 Settlement Agreement were initially required to govern for ten years, however, the Agreement also specified that the race-based transfer program could be extended to new students beyond the 2008-2009 ending date for new enrollments.  An initial five-year extension pursuant to this provision was unanimously approved by the VICC Board in June, 2007, with a second five-year extension approved in October, 2012.  As a result, new students are continuing to be accepted into the transfer program through at least the 2018-2019 school year.

22.     The VICC Board is solely responsible for extending the race-based transfer program. The assent of no other entity is required. Accordingly, VICC bears full responsibility for the continuing enforcement and administration of the race-based transfer program.

**Gateway Science Academy**

23.     Gateway Science Academy of St. Louis (Gateway) is a public charter school located in the City of St. Louis.

24.     Gateway provides its students with an innovative world class education, rich in math, science, and technology and focuses on preparing students to become bold inquirers, problem solvers, and ethical leaders, who are ready for post-secondary education.

25.     Gateway enrolls students who reside in the City of St. Louis.  In addition, under Missouri law, charter schools must enroll "[n]onresident pupils eligible to attend a district's school under an urban voluntary transfer program."  Mo. Ann. Stat. § 160.410.

26.     Non-black students who live in the county school districts of Affton, Bayless, Brentwood, Clayton, Hancock Place, Kirkwood, Ladue, Lindbergh, Mehlville, Parkway, Pattonville,

Ritenour, Rockwood, Valley Park, or Webster Groves are eligible to enroll at Gateway, because they could enroll in a "district's school under an urban voluntary transfer program." *Id.*

27.    African-American students who live in St. Louis County are ineligible to be enrolled at Gateway, or any charter school located in the City of St. Louis.

28.    Gateway officials gave La'Shieka White a handout explaining the enrollment requirements at Gateway.  A true and correct copy of that handout is attached as Exhibit C.  The handout accords with the race-based restrictions in the 2016-2017 Magnet School Guide.  In particular, it explains that non-African-American students residing in the Pattonville School District may be enrolled at Gateway.  African-American students residing in the Pattonville School District are ineligible to be enrolled.

**Facts Relating to the Plaintiffs**

29.    La'Shieka White and E.L. lived in the City of St. Louis when E.L. enrolled at Gateway in 2012.  For the past two years, their residence was a small two-bedroom apartment with no yard.  La'Shieka and E.L. lived there with La'Shieka's husband and their two children, a 2-year old boy and an 8-month old girl.

30.    At the White's previous home in the City of St. Louis, the family car was broken into on multiple occasions, and family members regularly heard gunshots.

31.    E.L. started at Gateway Science Academy (Gateway) in the City of St. Louis in August, 2012.  E.L. started there as a kindergartner and is now in the third grade.

32.    E.L. has excelled at Gateway.  He currently has a 3.79 GPA, and has above average testing scores in language arts, math, and science.

33.    In March, 2016, the White family moved to a house in Maryland Heights, Missouri. The Whites purchased the home so that they would have more space for their growing family,

including a backyard and basement.  Their new home is much safer than their past residence, and the family has yet to hear a gunshot.

34.     The White's new home is located in St. Louis County and is zoned for the Pattonville School District.

35.     Because of E.L.'s success at Gateway, La'Shieka sought to ensure his continued enrollment at the school after the family relocated to a safer community in St. Louis County.  When she inquired into enrolling E.L. at Gateway in future years, she learned that he would be unable to attend because he is African-American.

36.     If E.L. were white, he could enroll at Gateway Science Academy for the 2016-2017 school year.

## INJUNCTIVE RELIEF ALLEGATIONS

37.     Plaintiffs incorporate by reference and reallege each and every allegation set forth in paragraphs 1 through 36 of this Complaint.

38.     Defendant adopted and implemented the race-based rules governing the St. Louis Student Transfer Program.  These rules prohibit African-American students, like E.L., from transferring to schools within the City of St. Louis, including magnet schools.  The race-based transfer rules prevent charter schools like Gateway Science Academy from enrolling black students who reside in St. Louis County.  If Defendant is not enjoined from enforcing the race-based transfer rules, Plaintiffs will be irreparably harmed in that E.L. will be prohibited from attending Gateway Science Academy, St. Louis city magnet schools, and St. Louis city public schools.  The race-based transfer rules currently discriminate against Plaintiffs on the basis of race, and they will continue to do so in the foreseeable future.

39.     If not enjoined by this Court, Defendant and its agents, representatives, and employees will continue to discriminate against individuals on the basis of race, in contravention of the Equal Protection Clause of the United States Constitution.

40.     Pecuniary compensation to Plaintiffs or other victims of such continuing discrimination would not afford adequate relief.

41.     Injunctive relief is necessary to prevent a multiplicity of judicial proceedings on these same or similar issues.

42.     Accordingly, injunctive relief is appropriate.

## DECLARATORY RELIEF ALLEGATIONS

43.     Plaintiffs incorporate by reference and reallege each and every allegation set forth in paragraphs 1 through 42 of this Complaint.

44.     An actual and substantial controversy exists between Plaintiffs and Defendant as to their respective legal rights and duties.  Plaintiffs contend that the transfer program discriminates on the basis of race in violation of the Fourteenth Amendment to the United States Constitution. Defendant disputes that the transfer program is unconstitutional and illegal.

45.     There is a present justiciable controversy between the parties regarding the constitutionality and legality of Defendant's transfer program.  Plaintiffs will be directly, adversely, and irreparably harmed by Defendant's actions enforcing and administering the transfer program, and Defendant's continuing administration, implementation, reliance, and enforcement of the discriminatory transfer program now and in the future.  A judicial determination of rights and responsibilities arising from this actual controversy is necessary and appropriate at this time.

## CLAIM FOR RELIEF

**Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1981, 1983**

46.　　Plaintiffs incorporate by reference and reallege each and every allegation set forth in paragraphs 1 through 45 of this Complaint.

47.　　La'Shieka White and E.L. are persons under 42 U.S.C. §§ 1981 and 1983.

48.　　Defendant acted under the color of state law in developing, implementing, and administering the race-based Transfer Policy.

49.　　The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  All governmental action based on race must be subjected to detailed judicial scrutiny to ensure that no person is denied equal protection of the laws.

50.　　Defendant VICC's transfer program, on its face, discriminates against E.L. because of his race.  In particular, he may not continue to attend Gateway Science Academy pursuant to the program because he is an African-American student residing in St. Louis County.  If he were white, he would be eligible to attend any public school located in the City of St. Louis, including Gateway.

51.　　The Defendant's actions in enforcing and administering the transfer program are not narrowly tailored to a compelling state interest.

52.　　Preventing E.L. from obtaining a quality education at Gateway Science Academy because of his race serves no compelling state interest.

53.　　Defendant's racial discrimination against E.L. is not required to remedy past, intentional discrimination.

- 10 -

54.     The Defendant's actions in enforcing and administering the transfer program do not serve a compelling state interest, because the race-based restrictions on student transfers do not secure the educational benefits that flow from racial diversity in higher education.

55.     The Defendant's actions in enforcing and administering the transfer program are not narrowly tailored to a compelling state interest, because Defendant has not first determined that race-based measures are necessary to achieve a compelling governmental interest.

56.     The Defendant's actions in enforcing and administering the transfer program are not narrowly tailored to a compelling state interest, because Defendant cannot prove that a non-racial approach would fail to promote the government objective as well at a tolerable administrative expense.

57.     The Defendant's actions in enforcing and administering the transfer program are not narrowly tailored to a compelling state interest, because Defendant failed to exhaust race-neutral alternatives before resorting to race-based classifications.

58.     The Defendant's actions in enforcing and administering the transfer program are not narrowly tailored to a compelling state interest, because Defendant is using race as a categorical bar—and not merely a "plus" factor—in transfer decisions.

## PRAYER FOR RELIEF

WHEREFORE, based on the allegations above, Plaintiffs respectfully request judgment as follows:

1.     A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that the race-based restrictions in the transfer program enforced by VICC, which prohibit African-Americans residing in St. Louis County from transferring to schools in the City of St. Louis, are unconstitutional, illegal, invalid, and unenforceable, because they discriminate on the

basis of race and deny individuals equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and federal civil rights statutes 42 U.S.C. §§ 1981 and 1983;

2.      For a preliminary and permanent prohibitory injunction enjoining Defendant VICC and its agents, employees, officers, and representatives from adopting, enforcing, attempting, or threatening to enforce the race-based restrictions in the transfer program which prohibit African-Americans residing in St. Louis County from transferring to schools in the City of St. Louis, insofar as it discriminates on the basis of race and denies individuals equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and federal civil rights statutes 42 U.S.C. §§ 1981 and 1983;

3.      A permanent injunction prohibiting Defendant from using race in future student transfer decisions;

4.      Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable legal authority; and

5.      All other relief this Court finds appropriate and just.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 2.04, Plaintiffs demand a trial by jury in this action of all triable issues.

DATED:  May 4, 2016.

Respectfully submitted,

_____s/ Joshua P. Thompson_____

JOSHUA P. THOMPSON
Cal. State Bar No. 250955
WENCONG FA

Cal. State Bar No. 301679
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747
E-Mail:  jthompson@pacificlegal.org
E-Mail:  wfa@pacificlegal.org
Attorneys for Plaintiff