# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| E.L., a minor, by LA'SHIEKA WHITE the mother, legal guardian, and next friend of E.L., </br></br>Plaintiff, </br></br>v. </br></br>VOLUNTARY INTERDISTRICT CHOICE CORPORATION, </br></br>Defendant. | **JURY TRIAL DEMANDED** </br></br>Case No.: </br></br>4:16-cv-00629-RLW </br></br>**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

                                        **Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

 I. PLAINTIFFS ARE LIKELY TO SUCCEED
   ON THEIR EQUAL PROTECTION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   A. The Race-Based Transfer Program is Subject to Strict Scrutiny . . . . . . . . . . . . . . . 6

   B. The Transfer Program Does Not
     Further a Compelling Governmental Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   C. The Transfer Program Is Not Narrowly Tailored to a Compelling Interest . . . . . . . . 8

 II. PLAINTIFFS MEET THE REMAINING REQUIREMENTS
   FOR ISSUANCE OF A PRELIMINARY INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . 10

   A. Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief . . . . . . 10

   B. Preliminary Relief Is in the Public Interest and the Harm
     to Plaintiffs Outweigh Any Purported Harm to Defendant . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. United States*, 620 F.2d 1277 (8th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brown v. Bd. of Educ.*, 347 U.S. 483 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Brown v. Bd. of Educ.*, 349 U.S. 294 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Calvin Klein Cosmetics Corp. v. Lenox Labs.,Inc.*, 815 F.2d 500 (8th Cir. 1987) . . . . . . . . . . . 6

*City of Boerne v. Flores*, 521 U.S. 507 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

*Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . 5

*Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Elrod v. Burns*, 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Grutter v. Bollinger*, 539 U.S. 306 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-9

*Hill v. Xyquad, Inc.*, 939 F.2d 627 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Johnson v. California*, 543 U.S. 499 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Liddell v. Bd. of Educ. of the City of St. Louis, Missouri*, No 4:72-cv-100-SNL,
  1999 WL 33314210 (E.D. Mo. Mar. 12, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Liddell v. Bd. of Educ.*, 567 F. Supp. 1037 (E.D. Mo. 1983),
  aff'd, *Liddell v. Missouri*, 731 F.2d 1294 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

                                                                                                    **Page**

*McLaughlin by McLaughlin v. Boston Sch. Comm.*,
    938 F. Supp. 1001 (D. Mass. 1996) .................................................. 12

*Miller v. Johnson*, 515 U.S. 900 (1995) .......................................................... 6

*Palmore v. Sidoti*, 466 U.S. 429 (1984) .......................................................... 6

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
    551 U.S. 701 (2007) ...................................................... 1, 7-9, 11

*Phelps-Roper v. Nixon*, 545 F.3d 685 (8th Cir. 2008) ................................ 3, 12

*Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*,
    558 F.2d 861 (8th Cir. 1977) .................................................. 10

*Plyler v. Doe*, 457 U.S. 202 (1982) ................................................................ 6

*Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978) ....................... 6-7

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971) ............ 7, 9

*Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267 (1986) .................................. 6

### State Statute

Mo. Ann. Stat. § 160.410 ................................................................................ 5

### Rule of Court

Fed. R. Civ. Proc. 65 ...................................................................................... 5

### Miscellaneous

National Center for Education Statistics-Gateway Science Academy/St. Louis,
    *https://nces.ed.gov/globallocator/sch_info_*
    *popup.asp?Type=Public&ID=290059203174* ................................. 9

**INTRODUCTION**

La'Shieka White was shocked to learn that her third-grade son, E.L., could not continue his education at Gateway Science Academy because of his skin color. White Decl. ¶ 6. When La'Shieka moved with her family to a safer neighborhood in St. Louis County, E.L. was denied the opportunity to attend fourth grade public schools in the City of St. Louis because of his race. Under the St. Louis Student Transfer Program (transfer program), students living in suburban St. Louis counties may transfer to schools in the City of St. Louis only if they are not African-American. E.L. does not qualify, because he is black.

Defendant's transfer program smacks of state-sponsored segregation, where "schoolchildren were told where they could and could not go to school based on the color of their skin." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 747 (2007) (plurality). That system patently violates the Equal Protection Clause. *See Brown v. Bd. of Educ.*, 349 U.S. 294, 300-01 (1955). Plaintiffs bring this lawsuit to vindicate E.L.'s right to equal protection, and to enforce the Fourteenth Amendment's promise "to achieve a system of determining admission to the public schools on a nonracial basis." *Id.*

This Court should enter a preliminary injunction enjoining the race-based transfer program, which would permit E.L. to continue his academic success at Gateway Science Academy. The program is wholly inconsistent with the Equal Protection Clause as explained in *Brown* and the Supreme Court's more recent equal protection cases. In those cases, the Court specifies that explicit racial classifications—like the one contained in the transfer program—are subject to strict scrutiny. The government bears the burden of proving that its racially discriminatory actions are narrowly tailored to further a compelling governmental interest. *See, e.g., Johnson v. California*, 543 U.S. 499, 505 (2005); *Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411, 2419 (2013). Because Defendant

in this case cannot meet that heavy burden, Plaintiffs are likely to succeed on the merits of their Equal Protection claim.

Despite Plaintiffs high likelihood of success on the merits of their lawsuit, they will suffer irreparable harm if the race-based transfer program is not enjoined during this litigation. The 2016-2017 school year begins in August for St. Louis public schools generally, and Gateway's school year begins on August 10. If a preliminary injunction does not issue, E.L. will be forced to attend a new school with new teachers and new friends that uses a different curriculum in a different environment. This abrupt change will be forced upon the nine-year-old boy only because he is African-American. The Constitution forbids making E.L.'s skin color determinative for the elementary school he is eligible to attend. The deprivation of his constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable harm" *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The balance of equities and the public interest both favor preliminary relief. Without a preliminary injunction, the potential harm to Plaintiffs is severe: if not enjoined, Defendant's unconstitutional transfer program would prohibit E.L. from attending Gateway at a critical juncture in his life. *Cf. Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1065 (7th Cir. 2012) (testimony that stronger teacher was assigned to teach the Third Grade, rather than Seventh Grade, because third grade is a critical testing year and seventh grade is not). A preliminary injunction in this case would preserve the status quo by allowing E.L. to go to the same school he currently attends—a school that wants to be able to enroll E.L. *See* White Decl. ¶ 9. Any countervailing interest by Defendant in avoiding the administrative expense of using a race-neutral transfer program is plainly insufficient to override Plaintiffs' interest in equal treatment under the law. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 508 (1989) (interest in "avoiding [] bureaucratic effort" cannot justify racial

classifications). Lastly, the public interest is best served by the "preservation of constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 688 (8th Cir. 2008).

**STATEMENT OF FACTS**

In 1980, the United States Court of Appeals for the Eighth Circuit found that the St. Louis Board of Education engaged in *de jure* segregation in violation of the Fourteenth Amendment and ordered St. Louis-area schools to desegregate. *See Adams v. United States*, 620 F.2d 1277, 1297 (8th Cir. 1980). The court ordered the federal district court to retain jurisdiction to ensure that the plan to integrate St. Louis schools in accordance with the Equal Protection Clause "is, in fact, being carried out." *Id.* As a result, the parties agreed to a consent decree, which included a race-based student transfer plan. *See Liddell v. Bd. of Educ.*, 567 F. Supp. 1037 (E.D. Mo. 1983), *aff'd*, *Liddell v. Missouri*, 731 F.2d 1294 (8th Cir. 1984). The transfer plan allowed black students residing in the City of St. Louis to transfer to school districts in St. Louis County (city-to-county). Conversely, white students residing in St. Louis County were permitted to transfer to schools located in the City (county-to-city).

In 1999, the district court dissolved the consent decree and relinquished federal supervision over racial integration of St. Louis schools. The court dissolved all prior injunctions, and dismissed all pending motions as moot. *See Liddell v. Bd. of Educ. of the City of St. Louis, Missouri*, No 4:72-cv-100-SNL, 1999 WL 33314210, at *9 (E.D. Mo. Mar. 12, 1999).

A new settlement agreement transformed the federally supervised transfer program into a voluntary one agreed to by the parties. The agreement gave the task of administering the new transfer program to the Voluntary Interdistrict Choice Corporation (VICC), a non-profit governed by the superintendents of the St. Louis-area school districts. The agreement continued the race-based transfer program adopted in the dissolved consent decree. To this day, city-to-county transfers are

only permitted for black students; county-to-city transfers are only permitted for students who are not black.

The settlement agreement may be extended indefinitely; the race-based transfer program does not contain any certain termination date. The agreement originally contemplated its own termination in 2008-2009, but the VICC Board voted to extend its authority twice: first approving a five-year extension of the agreement in 2007, and then again in 2012. VICC was under no obligation to continue the race-based Transfer Program; it chose to do so. As a result of those decisions, students in St. Louis are currently subject to the race-based transfer program through at least the 2018-19 school year, at which time the Board may choose to extend the program again.

This year, VICC's discriminatory transfer program will prevent E.L. from enrolling in Gateway Science Academy—the only school he has ever attended. White Decl. ¶¶ 6, 10. Until March of this year, Plaintiffs E.L. and his mother La'Shieka White lived within city limits. White Decl. ¶ 3. For the past two years, La'Shieka and E.L. split a small two-bedroom apartment with three other family members. *Id.* The neighborhood was unsafe. Plaintiffs regularly heard gunshots outside the window, and La'Shieka's car was broken into several times. *Id.*

E.L.'s saving grace was Gateway Science Academy (Gateway) in the City of St. Louis, which he began attending as a kindergartner in 2012. White Decl. ¶ 7. E.L. has made many friends at Gateway, and has stayed out of trouble. White Decl. ¶¶ 7, 9. E.L. has succeeded at Gateway, and maintains a 3.79 Grade Point Average. White Decl. ¶ 8.

In March, 2016, E.L.'s family bought a larger house in Maryland Heights, Missouri, to accommodate the growing family. White Decl. ¶ 3. The White's new home is located in St. Louis County in the Pattonville School District. *Id.* Although La'Shieka was glad to have moved E.L. into

a safer neighborhood, she sought to extend E.L.'s academic success and friendships at Gateway Science Academy by continuing to enroll E.L. in the school. White Decl. ¶ 4.

E.L. was denied the opportunity to remain at Gateway because he is black. Missouri law provides that county residents—such as E.L.—who "are eligible to attend a district's schools under an urban voluntary transfer program" may enroll in any charter school in the City. Mo. Ann. Stat. § 160.410. The St. Louis Public Schools' Magnet School Guide specifies that only "Non-African-American students" living in the Pattonville School District are eligible to enroll in St. Louis Magnet Schools. Exhibit B, at 4. As a result, when La'Shieka inquired about E.L.'s eligibility to remain at Gateway, school officials gave her a handout explaining that the only reason E.L. could no longer attend Gateway is because he is African-American. *See* White Decl. ¶ 5.

There can be no doubt that the transfer program prohibits E.L. from attending Gateway, St. Louis magnet schools, and other St. Louis charter schools—solely on account of his race. Plaintiffs were shocked that such a blatantly discriminatory scheme still exists in 2016, and bring this lawsuit to vindicate E.L.'s Fourteenth Amendment right to equal protection of the laws.

## STANDARD OF REVIEW

The "issuance of a preliminary injunction" under Rule 65 of the Federal Rules of Civil Procedures "depends upon a 'flexible' consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The party moving for preliminary relief is required to show the threat of irreparable harm. *Id.* "No single factor in itself is dispositive; in each case all of the factors must be considered to

determine whether on balance they weigh towards granting the injunction." *Calvin Klein Cosmetics Corp. v. Lenox Labs.,Inc.*, 815 F.2d 500, 503 (8th Cir. 1987).

**ARGUMENT**

**I**

**PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR EQUAL PROTECTION CLAIM**

**A. The Race-Based Transfer Program Is Subject to Strict Scrutiny**

The Equal Protection Clause endeavors to create "a Nation of equal citizens . . . where race is irrelevant to personal opportunity and achievement." *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 277 (1986) (quoting *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984)). That is especially true in education, where the Supreme Court has repeatedly commanded the State to make educational opportunity "available to all on equal terms." *Plyler v. Doe*, 457 U.S. 202, 223 (1982) (quoting *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954)).

The race-based transfer program plainly violates that command. It prohibits African-Americans who reside in the county—and only African-Americans—from attending public schools in the City of St. Louis. Racial distinctions of this sort "are inherently suspect and . . . call for the most exacting judicial examination." *Miller v. Johnson*, 515 U.S. 900, 904 (1995) (quoting *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 291 (1978) (opinion of Powell, J.)). The program's race-based transfer criterion is constitutional only if the Defendant can show that its action—literally banning black students from having the same opportunities as students of other races—is narrowly tailored to further a compelling government interest. *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003). VICC cannot meet its heavy burden—"the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997).

## B. The Transfer Program Does Not Further a Compelling Governmental Interest

The race-based transfer program does not serve any compelling governmental interest. The only two interests that the Supreme Court has recognized as sufficiently compelling to overcome intentional race-based discrimination are plainly not at issue here. Furthermore, any interest in promoting racial diversity—*i.e.* racial balancing—in elementary education cannot be used to support a system that employs crude racial classifications like the transfer program.

This case does not implicate the compelling interest of remedying past discrimination. *Cf. Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) (approving race-based measures to eliminate "vestiges of state-imposed segregation"). In *Parents Involved*, the Supreme Court found that Jefferson County could not assert a compelling interest in remedying past discrimination—despite the fact that it was, like St. Louis-area schools, subject to a desegregation decree. *See Parents Involved*, 551 U.S. at 720. That is because, in both *Parents Involved* and in this case, "the District Court that entered" the consent decree had "dissolved it." *Id.* Accordingly, "[a]ny continued use of race must be justified" by VICC "on some other basis." *Id.* at 721 (footnote omitted).

Neither does this case involve the diversity interest upheld in *Grutter*, 539 U.S. at 328, for two reasons. For one, the interest upheld in that case was confined to the context of higher education. *Id.*; *see also Bakke*, 438 U.S. at 312 (Powell, J.) (basing the approval of race-conscious measures on the "freedom of a university to make its own judgments as to education"). Additionally, the diversity interest in *Grutter* was not focused on race alone, but encompassed several factors "that may contribute to [the] student body." *Grutter*, 539 U.S. at 337. The admissions program at issue in *Grutter* saw "many possible bases for diversity admissions," including linguistic ability,

community service, and work experience. *Id.* at 338. Conversely, VICC's transfer program focuses solely on race. VICC cannot rely upon *Grutter* to justify its system of blatant racial balancing, which the *Grutter* Court itself explained would be "patently unconstitutional." *Id.* at 330.

Third, an interest in avoiding racial imbalance in elementary schools is not one that can justify the use of explicit racial classifications. A school district may devise race-neutral measures, such as strategic site selection of new schools, drawing attendance zones, and the like, to further its interest in a diverse classroom, but it is prohibited from using means that treats students differently "solely on the basis of a systematic individual typing by race"—as the VICC transfer program does. *See Parents Involved*, 551 U.S. at 789 (Kennedy, J., concurring).

Plaintiffs are therefore likely to succeed on the merits because there is no interest compelling enough to justify VICC's explicitly discriminatory transfer program. After the district court dissolved the consent decree governing desegregation, the transfer program can no longer be justified by needing to remedy past intentional discrimination. The program is also flawed in that it considers racial diversity to be the sole determinant of a diverse school. This defect dooms the VICC's attempt to assert any other interest sufficiently compelling to justify its harsh racial prohibitions.

**C. The Transfer Program Is Not Narrowly Tailored to a Compelling Interest**

VICC's transfer program also falls short of the Supreme Court's narrow tailoring requirement for at least two reasons. First, the program "do[es] not provide for meaningful individualized review over applicants but instead rel[ies] on racial classifications in a nonindividualized, mechanical way." *Parents Involved*, 551 U.S. at 723 (internal quotation marks omitted). Like the plan invalidated in *Parents Involved*, the transfer program employs a myopic notion of diversity "[e]ven when it comes to race" by viewing race only in "white/nonwhite" terms. *Id. See* Compl. Exh. B (Magnet School Guide specifying that only non-blacks who reside in the county may transfer to schools in the City);

Compl. Exh. C (handout explaining that only non-blacks residing in the county may attend Gateway).

The consequences of VICC's overbroad approach are illustrated in this case. Without individualized review of transfer requests, the transfer program prohibits E.L. from attending Gateway even though his enrollment *increases* racial diversity at the school.[1] Put differently, VICC cannot show that its racial classifications are necessary to lessening discrimination or increasing diversity, when in E.L.'s case, the race-based restriction *further* racial isolation and discrimination, and *decrease* racial diversity. *See Grutter*, 539 U.S. at 327.

The transfer program also fails the narrow tailoring requirement because VICC has failed to consider race-neutral alternatives in any meaningful way. The "construction of new schools and the closing of old ones" can be just as effective, and far less demeaning, a tool at facilitating diversity than VICC's current policy. *Swann*, 402 U.S. at 20. There is no evidence that VICC has even attempted this or any other race-neutral method suggested by the Supreme Court. *See Parents Involved*, 551 U.S. at 789 (Kennedy, J., concurring) (predicting that race-neutral methods such as drawing attendance zones, allocating resources for special programs, and recruiting students in a targeted fashion would unlikely "demand strict scrutiny"); *see also Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 544 (3d Cir. 2011) (facially neutral redistricting program is permissible and analyzed under rational basis review).

For those reasons, VICC cannot show that its use of explicit racial classifications are narrowly tailored to further a compelling governmental interest. Because the transfer program

---

[1] In 2014, white students outnumbered black students at Gateway Science Academy 352-21. *See* National Center for Education Statistics-Gateway Science Academy/St. Louis, https://nces.ed.gov/globallocator/sch_info_popup.asp?Type=Public&ID=290059203174.

cannot satisfy strict scrutiny, Plaintiffs are likely to prevail on the merits of their equal protection claim.

II

**PLAINTIFFS MEET THE REMAINING REQUIREMENTS FOR ISSUANCE OF A PRELIMINARY INJUNCTION**

**A. Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

Absent the issuance of a preliminary injunction, Plaintiffs will suffer irreparable harm. The discriminatory transfer program prohibits E.L. from attending the only school he has ever known, the school in which he has made friends, stayed out of trouble, and excelled academically. *See* Decl. ¶ 7. Since the transfer program excludes E.L. from continuing his education at Gateway because he is black, there is little question what the ultimate outcome on the merits will be. But, because the school year at Gateway begins on August 10, 2016, E.L. cannot afford to wait for that outcome.

Unless preliminary relief is granted, Plaintiffs will continue to experience the stigma of the State's denigration of them as second-class citizens. Decl. ¶ 12. That harm is particularly acute in equal protection cases. The Supreme Court's canonical equal protection case concerned not just segregation's tangible effects, but also its implication of black inferiority. *See Brown*, 347 U.S. at 494 (segregation sent a message of inferiority, which "has a detrimental effect on colored children"). The same message harms Plaintiffs here.

Lest there be any doubt, these harms stem from an unconstitutional, and thus illegal, transfer program. The program plainly violates Plaintiffs' Fourteenth Amendment right to equal protection of the laws, and that alone "supports a finding of irreparable injury." *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 867 (8th Cir. 1977); *see also Elrod*, 427 U.S. at 373 (deprivation of constitutional rights "for even minimal periods of time, unquestionably constitutes

irreparable harm"). Because Plaintiffs' right to equal protection is threatened, "a finding of irreparable injury is mandated." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001).

**B. Preliminary Relief Is in the Public Interest and the Harm to Plaintiffs Outweigh Any Purported Harm to Defendant**

As discussed above, absent a preliminary injunction, Plaintiffs will suffer significant — and irreparable—harm: A violation of their constitutional rights, the indignity of being treated as second-class citizens, and the foreclosure of the opportunity for E.L. to continue attending his school. Those harms far outweigh any harm that would befall Defendant if preliminary relief is granted. Plaintiffs seek to enjoin only the provision of the transfer program that prevents black students living in St. Louis County from transferring to schools located in the City of St. Louis. The forward-looking nature of the relief sought answers the "central question" on the balance of equities in Plaintiffs' favor, because it "preserve[s] the status quo until the merits are determined." *Hill v. Xyquad, Inc.*, 939 F.2d 627, 630 (8th Cir. 1991) (internal quotation marks omitted).

By contrast, it is doubtful that Defendant can conjure up any harm besides the administrative inconvenience that comes with following the Constitution's instructions, and adopting a race-neutral transfer program. Convenience to the Defendant is no substitute for compliance with the Constitution. *See Croson*, 488 U.S. at 508 ("[T]he interest in avoiding the bureaucratic effort necessary to tailor remedial relief . . . cannot justify a rigid line drawn on the basis of a suspect classification."). Indeed, if VICC wants to bring together "students of different racial, ethnic, and economic backgrounds," it *must* find a way to do so "without resorting to widespread governmental allocations of benefits and burdens on the basis of racial classifications." *Parents Involved*, 551 U.S. at 798 (Kennedy, J., concurring).

An order enjoining the continued operation of the discriminatory transfer program is in the public interest. Even the school that E.L. seeks to attend, desires his continued enrollment. White Decl. ¶ 9. The public is best served, not by the continuance of a discriminatory transfer program, but rather by the "preservation of constitutional rights." *Phelps-Roper*, 545 F.3d at 688; *see also Awad v. Ziriax*, 670 F.3d 1111, 1131-32 (10th Cir. 2012) (a preliminary injunction that vindicates constitutional rights is "always in the public interest). A preliminary injunction in this case will give the Court time to consider any complexities without keeping E.L., who is entering a critical year of education, "on pins-and-needles about [his] educational future." *McLaughlin by McLaughlin v. Boston Sch. Comm.*, 938 F. Supp. 1001, 1017 (D. Mass. 1996). A preliminary injunction in this case "does not harm the public interest, [but] affirmatively serves it." *Id.*

## CONCLUSION

This Court should grant Plaintiffs' motion for a preliminary injunction and enjoin VICC from enforcing the provision in its transfer program that bans black students residing in St. Louis County from transferring to schools in the City of St. Louis.

DATED: May 11, 2016.

                                        Respectfully submitted,

                                            s/ Joshua P. Thompson
JOSHUA P. THOMPSON
Cal. State Bar No. 224436
WENCONG FA
Cal. State Bar No. 301679
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
E-Mail: jthompson@pacificlegal.org
E-Mail: wfa@pacificlegal.org
Attorneys for Plaintiff