UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| E.L., a minor, by LA'SHEIKA WHITE the Mother, legal guardian, and next friend of E.L., </br></br>Plaintiff,</br></br>vs.</br></br>VOLUNTARY INTERDISTRICT CHOICE CORPORATION,</br></br>Defendant. | Case No. 4:16CV629 RLW |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (ECF No. 10) and Defendant Voluntary Interdistrict Choice Corporation's Motion to Dismiss (ECF No. 19). These matters are fully briefed and ready for disposition.

## BACKGROUND

La'Shieka White alleges that she moved with her husband and three children from the City of St. Louis to the St. Louis County suburb of Maryland Heights because of the "rampant crime" in the City. (ECF No. 1, ¶¶1, 5). The family's St. Louis County residence is zoned for the Pattonville School District. (ECF No. 1, ¶¶5, 6). Ms. White's oldest child, E.L., is a minor and is African-American. E.L. is currently a third grade student at Gateway Science Academy ("Gateway") in the City of St. Louis. Gateway is a charter school in the City of St. Louis, not a magnet school. (ECF No. 20 at 8). Defendant Voluntary Interdistrict Choice Corporation ("VICC") is a 501(c)(3) non-profit corporation, organized under the laws of the State of Missouri. (ECF No. 1, ¶7). VICC is responsible for administering the St. Louis Student Transfer Program ("Transfer Program"), including the transfer of non-African-American St. Louis County students

1

to public schools within the City of St. Louis. (ECF No. 1, ¶7).

Under the current VICC policy, only African-American students residing within the City of St. Louis are eligible to transfer to a school district in the County of St. Louis. (ECF No. 1, ¶8). Conversely, under the current VICC policy, only white students residing in St. Louis County are eligible to transfer to a public school in the City of St. Louis. (ECF No. 1, ¶9).

Plaintiff has not alleged that she asked Gateway for a waiver for the school residency requirement as authorized by R.S. Mo. §167.020.2(2). Such a waiver may be granted on the "basis of hardship or good cause." R.S. Mo. §167.020.3.

Plaintiff seeks injunctive relief because VICC's "race-based transfer rules currently discriminate against Plaintiffs [sic] on the basis of race, and they will continue to do so in the foreseeable future." (ECF No. 1, ¶38). Plaintiff also seeks declaratory relief and alleges a claim for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§1981, 1983.

### PRIOR LITIGATION CREATING VICC AND MAGNET SCHOOLS

The Eighth Circuit has held that race-based interdistrict transfer of black City students to the predominantly white St. Louis County school districts, and of white County students to magnet schools in the predominantly black City district, is an appropriate, "constitutional" and "necessary" remedy for the adjudicated unconstitutional race-based school segregation in the City. *Liddell v. State of Mo.*, 731 F.2d 1294, 1318 (8th Cir. 1984) (*Liddell VII*) ("[w]e approve ... [t]he voluntary transfers of students between the city and suburban schools and the establishment of additional magnet schools ... in the City School District as necessary to the successful desegregation of the city schools"); *Liddell v. Bd. of Educ. of City of St. Louis*, No. 4:72CV100 SNL, 1999 WL 33314210, at *2, *9 (E.D. Mo. Mar. 12, 1999)(approving "maintaining the magnet

2

school program" and "continuing voluntary transfer plan" as "fair, reasonable, adequate and constitutionally permissible").

The 1999 Settlement Agreement (often called "Settlement Agreement" or "Agreement"), approved by the Honorable Stephen M. Limbaugh, Sr., provided for a continuation of the remedial efforts originally approved by the Eighth Circuit in *Liddell VII*. *See Liddell v. Bd. of Educ. of City of St. Louis*, No. 4:72CV100 SNL, 1999 WL 33314210, at *4, *9 (E.D. Mo. Mar. 12, 1999). The Settlement Agreement called for the continued funding and maintenance of magnet schools and County-to-City transfers would continue at a substantial level. Under the Agreement, VICC was established as the entity to administer the interdistrict transfer program. (ECF No. 20 at 7). VICC arranges for transportation of students participating in the City-to-County and County-to-City transfer programs authorized by the Agreement and acts as an agent for the purpose of distributing funding to the school districts educating those students. (ECF No. 20 at 7).

VICC notes that, as contemplated by the 1999 Settlement Agreement, the County-to-City magnet transfer program is phasing out. (ECF No. 20 at 5-6). VICC has recently promulgated a strategic plan for fully phasing out the race-based transfer program. (ECF No. 20 at 6).

## DISCUSSION

### I. Motion to Dismiss

#### A. Legal Standard

In ruling on a motion to dismiss or a motion for judgment on the pleadings, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v.*

*Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

### B. Complaint Fails to State a Claim

#### 1. Unitary status

VICC contends that where there is a court-ordered, race-based program to remedy an adjudicated violation of the Equal Protection Clause, the program cannot be challenged on equal protection grounds unless and until there has been a declaration of unitary status. Here, VICC argues that the transfer program cannot be challenged because there has been no declaration of "unitary status" in *Liddell*. *See Bd. of Educ. of Oklahoma City Pub. Sch., Indep. Sch. Dist. No. 89, Oklahoma Cty., Okl. v. Dowell*, 498 U.S. 237, 246 (1991) (before a court-ordered school desegregation remedy may be "terminated or dissolved," the parties are "entitled to a rather precise statement" that the district has achieved "unitary status"); *Hampton v. Jefferson County Bd. of Educ.*, 72 F. Supp. 2d 753 (W.D. Ky. 1999) (plaintiffs could not challenge remedial race-based student assignment because "Court requires proof of the Board's good faith and of an absence of vestiges to the extent practicable"). VICC maintains that the County-to-City magnet program is a continuing remedial program for adjudicated violations of the Equal Protection Clause. (ECF No. 20 at 11). VICC asserts that unless there has been a clear finding of "unitary status," then the

4

transfer program should continue as a matter of settled law without risk of violating the Equal Protection Clause.

In response, Plaintiff argues that a "unitary status" finding is not a prerequisite to challenging discriminatory terms in a settlement. (ECF No. 22 at 2). Plaintiff asserts that the Ninth, Fifth, Sixth, and Eleventh Circuits have all permitted challenges to race-based terms in a consent decree under the Equal Protection Clause. (ECF No. 22 at 2-3 (citing *Ho by Ho v. San Francisco Unified Sch. Dist.*, 147 F.3d 854, 859 (9th Cir. 1998); *Dean v. City of Shreveport*, 438 F.3d 448, 456-57 (5th Cir. 2006); *Detroit Police Officers Ass'n v. Young*, 989 F.2d 225, 227 (6th Cir. 1993); *In re Birmingham Reverse Discrimination Employment Litig.*, 20 F.3d 1525, 1544 (11th Cir. 1994). Further, Plaintiff claims that the Court can address whether VICC's ban on black student transfers serves to remedy past discrimination against black students without addressing whether St. Louis schools are unitary. (ECF No. 22 at 3). Plaintiff claims that the only case that supports VICC's position mandating a finding of unitary status is one out-of-circuit district case that has not been followed. (ECF No. 22 at 4-5 (citing *Hampton*, 72 F. Supp. 2d 753)). Plaintiff states that if the Court follows *Hampton*, then the Court should invite Plaintiff to file a motion to modify the settlement, not dismiss the case. (ECF No. 22 at 5).

The Court agrees that there has never been an express declaration of unitary status in *Liddell* or any subsequent declaration. *See Bd. of Educ. of Oklahoma City Pub. Sch., Indep. Sch. Dist. No. 89, Oklahoma Cty., Okl. v. Dowell*, 498 U.S. at 246. Rather, all of the orders from courts in this district and the Eighth Circuit have discussed the need for remedial efforts to seek integration of the public school systems. *See Liddell VII*, 731 F.2d at 1318; *Liddell v. Bd. of Educ. of City of St. Louis*, No. 4:72CV100 SNL, 1999 WL 33314210, at *4, *9.

The Court further notes that none of the cases cited by Plaintiff support her claim that a finding of unitary status is unnecessary in a school desegregation lawsuit such as this case. *See*

ECF No. 24 at 2-3. None of the cases cited by Plaintiff involved a challenge to a court-imposed remedy for an adjudicated violation of the Equal Protection clause in a contested *de jure* school segregation class action. Most of the cases cited by Plaintiff involve consent decrees adopted to address claims of employment discrimination that were never proven to a court. Only two cases cited by Plaintiff involve race-based student assignments in schools, but neither of those cases involved an adjudication of a violation of the Equal Protection Clause. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) is inapposite because the "school districts in [those] cases voluntarily adopted student assignment plans that rely upon race to determine which public schools certain children may attend." *Id.* at 709-10. Unlike the present case, the Supreme Court noted "Seattle has never operated segregated schools—legally separate schools for students of different races—nor has it ever been subject to court-ordered desegregation. It nonetheless employs the racial tiebreaker in an attempt to address the effects of racially identifiable housing patterns on school assignments." *Id.*, 551 U.S. at 712. Likewise, in *Ho by Ho v. San Francisco Unified Sch. Dist.*, 147 F.3d 854 (9th Cir. 1998), the parties had entered into a consent decree prior to an adjudication of a violation. *See San Francisco NAACP v. San Francisco Unified Sch. Dist*, 413 F. Supp. 2d 1051, 1054 (N.D. Cal. 2005) (noting the parties entered into a consent decree prior to adjudication). Thus, unlike the cases cited by Plaintiff, in *Liddell* both the violation of the Equal Protection clause and the remedy were vigorously litigated by the parties. *See Adams v. United States*, 620 F.2d 1277, 1280 (8th Cir. 1980) (the Board of Education failed to take adequate steps "to disestablish the existing segregated school system"); *Liddell v. State of Mo.*, 731 F.2d 1294, 1308 (8th Cir. 1984) ("The violation scarred every student in St. Louis for over five generations and it gained legitimacy through the State Constitution and through the State's preeminent role in education."). Further, it was adjudicated that "[e]xamination of voluntary interdistrict transfers confirms that, as a remedy for an intradistrict violation, such transfers

6

comply with constitutional standards." *Liddell v. State of Mo.*, 731 F.2d 1294, 1305 (8th Cir. 1984). Barring any finding contrary to this, the Court holds that the remedial means are still necessary, unitary status has not been achieved, and Plaintiff's claims should be dismissed.

Finally, the Court determines that VICC is not required to prove "narrowly tailoring" to justify the race-based transfer program. (ECF No. 24 at 6). The Court has already approved the remedies imposed to address the adjudicated Equal Protection violations. *See Liddell v. Bd. of Educ. of City of St. Louis*, No. 4:72CV100 SNL, 1999 WL 33314210, at *1 (E.D. Mo. Mar. 12, 1999) ("This remedy has been funded by the State and the City Board of Education, and has been supervised by this Court on an ongoing basis with the assistance of various Court-appointed advisors and monitors."); *Liddell VII*, 731 F.2d at 1305 (meets constitutional standards); *see also Vaughns v. Bd. of Educ. of Prince George's Cty.*, 742 F. Supp. 1275, 1296-97 (D. Md. 1990) (Strict scrutiny did not apply to equal protection challenge to Board's faculty assignment policy because it was "not deal with a plan independently and voluntarily conceived and executed by a school board.... Rather, there exists a court-ordered plan[.]"). Therefore, the Court does not apply strict scrutiny to this case and dismisses Plaintiff's action.

### 2. Judgment Preclusion

VICC argues that Plaintiff's lawsuit is an improper collateral attack on Judge Limbaugh's final judgment approving the provisions of the Settlement Agreement as "constitutionally permissible." *Liddell v. Bd. of Educ. of City of St. Louis*, No. 4:72CV100 SNL, 1999 WL 33314210, at *9 (E.D. Mo. Mar. 12, 1999). Likewise, VICC contends that this lawsuit is a "frontal assault on the Eighth Circuit's en banc holdings that the 'utility and propriety of magnets as a desegregation remedy is beyond dispute' and that the transfer program 'compl[ies] with constitutional standards.'" (ECF No. 20 at 11 (citing *Liddell VII*, 731 F.2d at 1305). VICC argues that the "policy arguments against collateral attacks are particularly compelling" given that this is

a court-approved class-action settlement in a school desegregation case. (ECF No. 20 at 12 (citing *Garcia v. Bd. of Ed., Sch. Dist. No. 1, Denver, Colo.*, 573 F.2d 676, 679 (10th Cir. 1978)).

In response, Plaintiff maintains that she cannot be held to the terms of a voluntary settlement of which she was not a part. (ECF No. 22 at 5 (citing *Martin v. Wilks*, 490 U.S. 755, 109 S. Ct. 2180, 104 L. Ed. 2d 835 (1989); *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).

The Court holds that Plaintiff's claims are barred by res judicata and collateral estoppel pursuant to the Eighth Circuit's rulings in *Liddell*. The Court notes that neither *Martin* nor *Hansberry*, cited by Plaintiff, was a class action involving school desegregation. *Liddell* is a class-action desegregation lawsuit and its holdings are binding on the entire class, including "those who were either not born or not yet in school at that time." *Bronson v. Bd. of Ed. of Sch. Dist. of City of Cincinnati*, 510 F. Supp. 1251, 1272 (S.D. Ohio 1980). The Court, therefore, holds it is bound by the prior adjudications holding the desegregation programs are constitutional. The Court dismisses Plaintiff's action also on this basis.

### 3. 1999 Settlement Agreement

VICC contends that Plaintiff's cause of action is precluded by the express release provisions of the Agreement. VICC notes that the Agreement was adopted by this Court as a means to end litigation regarding the transfer program. (ECF No. 20 at 12). The Agreement provides that the "taking of any ... action at any time authorized in accordance with the rights and options granting in [this Agreement] shall not serve as the basis for any claim or lawsuit against any County District or New Entity," and further provides that "the future continuation of any conduct, custom or practice permissible under the 1983 Settlement Agreement shall also not serve as the basis for any claim or lawsuit against any County District or the New Entity." (ECF No. 20 at 12). These limitations and releases were approved and incorporated by this Court's order and final judgment. (ECF No. 20 at 12 (citing *Liddell*, 1999 WL 33314210, at *9). VICC argues that

this case must be dismissed because VICC's extensions and current continuation of the transfer program "shall not serve as the basis for any claim or lawsuit against [VICC]." (ECF No. 20 at 13 (citing the Agreement).

In response, Plaintiff argues that VICC cannot satisfy the constitutional requirements of "strict scrutiny" to support the program that prohibits African-American children in St. Louis County from transferring to magnet schools in the City of St. Louis. (ECF No. 22 at 6-7).

As the Court previously discussed, the Court does not apply strict scrutiny to the desegregation plan at issue here because it has already been approved by the Court. *See Liddell v. Bd. of Educ. of City of St. Louis*, No. 4:72CV100 SNL, 1999 WL 33314210, at *1 (E.D. Mo. Mar. 12, 1999); *Liddell v. State of Mo.*, 731 F.2d 1294, 1305 (8th Cir. 1984); *see also Vaughns*, 742 F. Supp. at 1296-97. Plaintiff has provided no basis for challenging the Settlement, other than strict scrutiny, which does not apply to a judicially-created remedial action such as this. Indeed, the Agreement approved by this Court released VICC from the type of claim alleged in this case and precludes Plaintiff's action against VICC. Accordingly, the Court dismisses Plaintiff's claim on this basis as well.

### C. Plaintiff Lacks Standing

"Article III standing is a threshold question in every federal court case." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir.2003). "The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). A central component of the "case or controversy" requirement is standing, "which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability." *Lance v. Coffman*, 549 U.S. 437, 439, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007); *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 497 (8th Cir. 2014).

### 1. Injury

VICC contends that Plaintiff lacks Article III standing because E.L.'s injury is not redressable by VICC. (ECF No. 20 at 16). Redressability is the "likelihood that the requested relief will redress the alleged injury." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012). VICC asserts that "as a matter of Article III jurisdiction, there is no sufficiently pled present case or controversy to litigate between plaintiff and VICC." (ECF No. 20 at 16 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("there must be a causal connection between the injury and the conduct complained of").

Plaintiff asserts that, under VICC policy, if E.L. were any race other than African-American, he could enroll in Gateway. (ECF No. 22 at 9). Plaintiff argues that VICC's policy denies equal protection by withholding a governmental benefit to E.L. because he is African-American. Thus, Plaintiff asserts that E.L. has suffered the injury because he is ineligible to attend Gateway or to attend a magnet school in the City of St. Louis, even though his white neighbors are given that opportunity. (ECF No. 22 at 9). Plaintiff claims that it is "of no moment that E.L. has yet to apply to a magnet school" because his is "able and ready" to apply to magnet schools. (ECF No. 22 at 9 (citing *Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993)). Plaintiff claims he is not required to submit an application before challenging the constitutionality of the laws governing applications. (ECF No. 22 at 9 (citing *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982) ("exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983)).

Based upon the allegations in the Complaint, the Court holds that Plaintiff also lacks standing to bring this action. It is undisputed that VICC has no relationship with the charter schools, including Gateway. Indeed, VICC only handles certain aspects of the City's magnet

school program. Plaintiff has uniformly asserted that she wants her son to attend Gateway, not any other magnet school. *See* Complaint, ¶4 ("I want E.L. to remain at Gateway Science Academy and attend that school through at least the Fifth Grade."). Although Plaintiff now states that her son is "ready and able" to attend any magnet school, this relief is not sought in the Complaint. Nowhere in her Complaint does she seek admission for her son at a magnet school. Further, there is no allegation that Plaintiff or her son has applied for admission to any magnet school. Likewise, Plaintiff has not shown that VICC can grant Plaintiff a waiver under R.S. Mo. §167.020(2), which further undercuts any claim that VICC can redress Plaintiff's injury. Therefore, the Court holds that Plaintiff lacks standing to bring an Equal Protection claim against VICC with respect to her son's inadmissibility to Gateway.

### 2. VICC does not run Gateway

VICC states that it plays no role with respect to the administration or admission at Gateway or any other charter school. (ECF No. 20 at 14). VICC's involvement with schools in the City includes only the *Liddell* magnet schools pursuant to the Agreement's County-to-City magnet transfer program. (ECF No. 20 at 14). VICC notes that charter schools are independent and make their own enrollment decisions. (ECF No. 20 at 14 (citing R.S. Mo. §§160.400.1, 160.410)). VICC notes that the Complaint does not allege that Gateway made an enrollment decision or if Plaintiff requested a waiver of the school residency requirement under R.S. Mo. §167.020.2(2). VICC further asserts that Gateway's alleged admission policy is contrary to its statutory obligation "not [to] limit admission based on race." (ECF No. 20 at 15 (citing R.S. Mo. §160.410.0)). Thus, although VICC admits that there "at least appears to be an issue whether Gateway has the legal right to deny admission to plaintiff's son as a matter of Missouri statutory law," but that "is a question that is not properly presented or litigable in this case against VICC, which is not a charter school[.]" (ECF No. 20 at 15).

11

In response, Plaintiff claims that E.L.'s injury is a direct consequence of VICC's discriminatory policy. (ECF No. 22 at 10). Plaintiff admits that VICC's transfer policy affects "only" magnet school transfers. (ECF No. 22 at 10). However, Plaintiff asserts that state law requires charter schools to enroll any student eligible to transfer into a magnet school under VICC's discriminatory policy. (ECF No. 22 at 10 (citing R.S. Mo. §160.410(2)).[1] Plaintiff argues that if VICC did not prohibit black students from transferring to magnet schools, Gateway would have no discretion but to enroll E.L. (ECF No. 22 at 10). Plaintiff maintains that Gateway's decision to follow VICC guidelines as a matter of state law was not an "unfettered choice." (ECF No. 22 at 11). Therefore, Plaintiff claims that she has satisfied her "relatively modest" burden of establishing that E.L.'s injury is fairly traceable to VICC's discriminatory policy. (ECF No. 22 at 11 (citing *Bennett v. Spear*, 520 U.S. 154, 171 (1997)). Further, Plaintiff contends that E.L. is not required to demonstrate that he has exhausted all possible remedies—including requesting a waiver—to establish Article III standing. (ECF No. 22 at 11-12).

As previously alluded to, the Court also holds that Plaintiff lacks standing because VICC cannot redress Plaintiff's injury. VICC was created out of the Settlement Agreement in order to administer the magnet school program. It has no involvement in the Charter schools. VICC has no ability grant Plaintiff to waiver to allow her admission to Gateway, nor can VICC comply with Gateway's statutory imperative not to base admission on race. *See* R.S. Mo. §§167.020 and 160.410. Therefore, the Court holds that VICC cannot redress the injury alleged by Plaintiff and dismisses her claim for lack of standing.

---

[1] R.S. Mo. §160.410(2) provides that "A charter school shall enroll [n]onresident pupils eligible to attend a district's school under an urban voluntary transfer program."

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Voluntary Interdistrict Choice Corporation's Motion to Dismiss (ECF No. 19) is **GRANTED**. An appropriate Judgment and Order of Dismissal is filed herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 10) is **DENIED** as moot.

Dated this 15th day of July, 2016.

                                                          RONNIE L. WHITE
                                                          UNITED STATES DISTRICT JUDGE